THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID FLYNN,           )
                       )
         Plaintiff,    )
                       )       Civil Action Number:
v.                     )
                       )
MICHAEL J. WELCH, JIM FORREST,  )
and STEPHEN TRAISTER,  )
                       )
         Defendants.   )
_____)

## COMPLAINT

Plaintiff David Flynn, by counsel and pursuant to 42 U.S.C. § 1983, brings this action against Defendants Michael J. Welch, Jim Forrest, and Stephen Traister for violating his First Amendment rights and seeks compensatory and punitive damages, attorneys' fees, and all other appropriate relief.

## JURISDICTION AND VENUE

1. The Court has jurisdiction of this lawsuit under 28 U.S.C. §§ 1331 and 1343(a)(3).

2. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff David Flynn is an individual and resident of the Commonwealth of Massachusetts.

4. Defendant Michael J. Welch is the Superintendent of the Dedham Public Schools. As superintendent, Welch may hire and fire athletic coaches within Dedham Public Schools. Mass. Gen. Laws ch. 71, § 47A (2014).

5.  Defendant Jim Forrest is the Principal of Dedham High School. As principal, Forrest may hire and fire athletic coaches at Dedham High School with prior approval by the superintendent. Gen. Laws ch. 71, § 59B (2018).

6.  Defendant Stephen Traister is the Director of Athletics of Dedham High School. As athletic director, Traister oversees the day-to-day operations of Dedham High School's athletic teams and all athletic coaches report to him.

7.  Defendants Welch, Forrest, and Traister are all sued in their personal capacity for actions taken under the color of state law.

## STATEMENT OF FACTS

### I.

8.  Dedham Public Schools is a school district in Dedham, Massachusetts. It operates an early childhood education center, four elementary schools, a middle school, and a high school.

9.  Dedham Public Schools is governed by a committee consisting of seven members, including a Chairperson and a Vice-Chairperson. Day to day operations are overseen by a superintendent.

10. Plaintiff has two children who, at all relevant times, were enrolled in Dedham Public Schools. Plaintiff's daughter attended Dedham Middle School. Plaintiff's son attended a Dedham Public Schools elementary school.

11. Plaintiff also was the head football coach at Dedham High School ("DHS"), a position he had held coach since 2011.

12. Plaintiff graduated from DHS in 1989. As a senior and a Boston Globe All-Scholastic, Plaintiff led the DHS Marauders to an undefeated season, a Bay State League

Championship, and a trip to the Eastern Massachusetts Super Bowl at Foxboro Stadium. He was inducted into the DHS Athletic Hall of Fame in 2002.

13. After playing football at Union College, Flynn became an assistant football coach at Worcester Polytechnic Institute. Thereafter, he coached football at Harvard University from 1995 to 1998 and Fitchburg State University from 1998 to 2001. He was an assistant football coach at DHS from 2002-06 and at Braintree High School from 2006 to 2011.

14. Plaintiff was hired as head football coach at DHS, a paid position, in March 2011. Asked about returning to his alma matter as head coach, Plaintiff stated, "This is my hometown. This is where I want to live and raise my family. When the opportunity arose, I knew it was really special."

15. In 2010, the DHS football program suffered a 1-10 season and barely had enough players to field a competitive team. Plaintiff advanced the program dramatically. Since 2017, the team has compiled an overall 19-14 record, with an 8-3 record and a victory in the playoffs in 2018. Numerous students who played football for Plaintiff have gone on to play at the collegiate level.

16. Plaintiff rebuilt his hometown team by dedicating his life to his players. He not only gives them a substantial amount of his time on the field but also provides rides and equipment to players in need. Plaintiff also is supportive of all members of the community. He invited a female student to join the JV football team and welcomed a student with special needs to serve as team manager. He is well-liked and highly respected among parents and students.

## II.

17.     Plaintiff's daughter is in the seventh grade and began the school year at Dedham Middle School on September 16, 2021. All instruction at Dedham Middle School is conducted remotely due to the Covid-19 pandemic.

18.     Before instruction began, Plaintiff and his wife asked Dedham Middle School's principal for copies of the syllabi and course descriptions for all seventh-grade classes. The principal directed Plaintiff and his wife to the Dedham Public Schools website.

19.     Plaintiff and his wife visited the website and, among the classes listed for the seventh grade, saw a class identified as "World Geography and Ancient History I." According to the description on the website:

> Grade seven is the continuation of the Ancient History and World Geography curriculum. Students resume where they left off in grade six and continue to produce work in their interactive notebooks.
>
> Regions and units taught in grade seven include – Review of Geography and Civilizations, Rome, Europe, Africa, Latin America, North America, and South America.

The website noted that the curriculum aligned with the current Massachusetts Curriculum Framework for History and Social Sciences as well as the Massachusetts Grade 7 Content Standards.

20.     During the first week of school, Plaintiff and his wife observed that the instruction their daughter was receiving in "World Geography and Ancient History I" was unrelated to the ancient history and world geography subjects described on the Dedham Public Schools website. Instead, the instruction concerned issues of race, gender, stereotypes, prejudices, discrimination, and politics, among others. In one assignment, Plaintiff's daughter was asked to consider various "risk factors" and "mitigating factors" that two people – one

identified as "white" and the other identified as "black" – purportedly might use to assess each other on a city street. Included among the various factors were skin color, gender, age, physical appearance, and attire. "Black," "aggressive body language" and "wrong neighborhood" were among the "risk factors" purportedly assessed by the person identified as "white." "White" and "Police officer" were among the "risk factors" purportedly assessed by the person identified as "black."

21. Plaintiff and his wife also observed that the instruction materials included a cartoon version of their daughter's teacher –a "Memoji" – wearing a Black Lives Matter t-shirt, which Plaintiff and his wife reasonably interpreted as the teacher expressing support for the Black Lives Matter movement during class time.

22. Plaintiff and his wife were concerned about the instruction their daughter was receiving and contacted both the teacher and the school's principal. The principal responded, but Plaintiff and his wife did not feel that their concerns were addressed adequately.

23. On October 14, 2020, Plaintiff and his wife emailed Superintendent Welch with their concerns about the instruction and asked him for assistance. The email raised numerous issues, including the following:

- Dedham Public Schools changed the curriculum of the seventh-grade history class without notifying parents or having a course description and syllabus available for parents to review;
- The new seventh-grade history class curriculum containing coursework on politics, race, gender equality, and diversity that were not suitable for twelve- and thirteen-year olds;
- The seventh-grade history teacher was not teaching topics of politics, race, gender equality, and diversity objectively;
- The seventh-grade history teacher using a cartoon character of herself wearing a t-shirt supporting a controversial political movement; and
- The seventh-grade history teacher using class materials that labeled all police officers as risks to all black people and all black males as risks to white people.

24. Plaintiff and his wife had discussed the instruction with other parents and knew that other parents were concerned about the instruction as well. Accordingly, Plaintiff and his wife represented in the October 14, 2020 email that their concerns were shared by other parents.

25. In addition to reaching out to Superintendent Welch, Plaintiff forwarded the October 14, 2020 email to three members of the Dedham School Committee: Vice-Chairperson Tracey White, Steve Bilafer, and Mayanne MacDonald Briggs.

26. On October 23, 2020, Plaintiff and his wife met with Superintendent Welch, at Superintendent Welch's invitation, to discuss the concerns raised in the October 14, 2020 email.

27. After the meeting, Plaintiff and his wife still did not feel that their concerns were adequately addressed, and, on October 23, 2020, Plaintiff sent an email to Dedham School Committee Vice-Chairperson White and committee members Bilafer and Briggs, the same three school committee members to whom he had forwarded the October 14, 2020 email. The email summarized Plaintiff's concerns and Superintendent Welch's response. Plaintiff concluded by stating:

> The Superintendent has had the opportunity to make sure the Dedham teachers conduct themselves as professionals and to teach the courses objectively and without biased opinions. He chose not to. I believe that the real men and women in the world are the ones who have the ability to compromise, especially in extremely controversial situations. Compromise allows people to experience life as a team. This is where unity brings individual pride together and relationships begin to strengthen. I believe all relationships are based on compromise. The Superintendent was not willing to compromise. I explained to him that if the teacher teaches the course objectively and removes the BLM logo from the class, people will soon get over the fact that the class was purposely created without notifying parents and without having a visible course curriculum, syllabus and learning objective. Apparently, it does not mean much to him that the Dedham Public School System is losing two wonderful students.

28. Plaintiff also forwarded his October 23, 2020 email to approximately twenty other concerned parents. On information and belief, Vice-Chairperson White and committee members Bilafer and Briggs knew other parents had received Plaintiff's email.

29. On October 30, 2020, Plaintiff and his wife removed their children from Dedham Public Schools. At that time, they believed the issue was behind them.

### III.

30. Plaintiff's employment as head football coach at DHS was memorialized by an annual contract that had been renewed every year since 2011. The renewal was always *pro forma*. One year, Plaintiff received a contract after the season had concluded.

31. Dedham Public Schools had given Plaintiff every indication his contract would be renewed for the 2020-21 season if it had not been renewed already. Plaintiff had been given no reason to believe his contract would not be renewed. In June and July 2020, Athletic Director Traister informed Plaintiff that, due to the Covid-19 pandemic, it had not been determined whether the season would take place in the Fall of 2020 or the Winter/Spring of 2021. On September 3, 2020, Athletic Director Traister sent Plaintiff a notice that Traister sent to all DHS athletic coaches. Also in September 2020, Athletic Director Traister asked Plaintiff if Plaintiff could act as site coordinator for DHS athletic events on weekends because Traister was unavailable to attend. On January 15, 2021, Athletic Director Traister sent Plaintiff the schedule for the upcoming football season, scheduled to begin on February 22, 2021. The Dedham Public Schools website even listed Plaintiff as the head football coach in its "2020-2021 Coaches Directory Dedham" (available at https://www.dedham.k12.ma.us/Page/2064). It still does so as of the date of this complaint.

32. On January 20, 2021, Plaintiff met with Superintendent Welch, DHS Principal Forrest, and Athletic Director Traister. At the meeting, Superintendent Welch handed Plaintiff a copy of the October 23, 2020 email Plaintiff had sent to Dedham School Committee Vice-Chairperson White and committee members Bilafer and Briggs. Superintendent Welch informed Plaintiff that he had received the email from Dedham School Committee member Briggs and that Briggs asked Superintendent Welch, "What are we going to do about this?" Superintendent Welch asked Plaintiff if he had sent the October 23, 2020 email to other parents of students at Dedham Public Schools. Plaintiff acknowledged that he had.

33. After discussing the email with Plaintiff, Superintendent Welch, Principal Forrest, and Athletic Director Traister informed Plaintiff that they "were going in a different direction" with the football program.

34. On information and belief, Superintendent Welch, DHS Principal Forrest, and Athletic Director Traister had decided to fire Plaintiff and/or not renew Plaintiff's contract sometime before the January 20, 2021 meeting. Minutes after the meeting ending and before Plaintiff had even returned home, Superintendent Welch, DHS Principal Forrest, and Athletic Director Traister publicly released a letter to DHS football players and families, signed by Superintendent Welch, DHS Principal Forrest, and Athletic Director Traister, stating in pertinent part:

> We are also writing today and are sorry to inform you that Dave Flynn will not be reappointed as the Head Coach of Dedham High School football. We met with Mr. Flynn today because he has expressed significant philosophical differences with the direction, goals, and values of the school district. Due to these differences, we felt it best to seek different leadership for the program at this time.

The letter plainly had been prepared in advance of the meeting with Plaintiff.

- 8 -

35. Plaintiff has never been provided any indication about the reason for his firing and/or the nonrenewal of his contract other than Superintendent Welch's comments at the January 20, 2021 meeting about the October 23, 2020 email, and Plaintiff is aware of no other reason.

36. Plaintiff has suffered loss of earning, emotional distress, loss of reputation, and harassment as a result of being firing and/or the nonrenewal of his contract by Superintendent Welch, Principal Forrest, and Athletic Director Traister.

## COUNT I
### (42 U.S.C. § 1983 – Retaliation for Protected Petitioning)

37. Plaintiff realleges paragraphs 1-36 as if full stated herein.

38. Plaintiff enjoys the right to petition the government as protected by the First Amendment to the United States Constitution.

39. At all relevant times, Plaintiff was engaged in constitutionally protected petitioning when he communicated with Dedham Public Schools officials about the instruction his daughter was receiving at Dedham Middle School, including when he sent the October 23, 2020 email. At all relevant times, Plaintiff's petitioning of Dedham Public Schools officials was undertaken in his capacity as a parent and a citizen raising a matter of public concern, not as the DHS head football coach raising matters about the DHS football program.

40. Defendants, acting under color of Massachusetts law, deprived Plaintiff of his rights under the First Amendment to the United States Constitution by firing Plaintiff and/or failing to renew his contract as DHS's head football coach in retaliation for exercising his right to petition. The firing and/or nonrenewal constitutes an adverse employment action.

41. Plaintiff's interest in petitioning Dedham Public Schools officials, as a parent and as a citizen, about the instruction his daughter was receiving outweighs any interest Dedham

Public Schools may have had in promoting the efficiency of the educational and other services it provides. Had Plaintiff remained as DHS's head football coach, his petitioning would not have had any effect on his performance as coach, the upcoming football season, the DHS football program, or the operations of Dedham Public Schools.

42. Plaintiff's petitioning of the government was a substantial or motivating factor in Defendants' decision to fire him and/or not renew his contract, and but for Plaintiff's protected petitioning, he would not have been fired and/or his contract would have been renewed.

43. Plaintiff suffered loss of earning, emotional distress, loss of reputation, and harassment as a direct and proximate result of Defendants' violation of his constitutional rights.

## COUNT II
### (42 U.S.C. § 1983 – Retaliation for Protected Speech)

44. Plaintiff realleges paragraphs 1-43 as if full stated herein.

45. Plaintiff enjoys the right to Freedom of Speech as protected by the First Amendment to the United States Constitution.

46. At all relevant times, Plaintiff was engaged in constitutionally protected speech when he communicated with Dedham Public Schools officials about the instruction his daughter was receiving at Dedham Middle School, including when he sent the October 23, 2020 email. At all relevant times, Plaintiff's petitioning of Dedham Public Schools officials was undertaken in his capacity as a parent and citizen raising a matter of public concern, not as the DHS head football coach raising matters about the DHS football program.

47. At all relevant times, Plaintiff was engaged in constitutionally protected speech when he emailed his concerns about the instruction his daughter was receiving at Dedham Middle School to other parents, including when he sent his October 23, 2020 email to other parents. At all relevant times, Plaintiff's speech was undertaken in his capacity as a parent and a

citizen raising a matter of public concern, not as the DHS head football coach raising matters about the DHS football program.

48. Defendants, acting under color of Massachusetts law, deprived Plaintiff of his rights under the First Amendment to the United States Constitution by firing Plaintiff and/or failing to renew his contract as DHS's head football coach in retaliation for exercising his right to free speech. The firing and/or nonrenewal constitutes an adverse employment action. Defendants, acting under color of Massachusetts law, fired or did not reappoint Plaintiff as head football coach in retaliation for his protected speech. The firing and/or nonrenewal constitutes an adverse employment action.

49. Plaintiff's interest in speaking out, as a parent and as a citizen, about the instruction his daughter was receiving outweighs any interest Dedham Public Schools may have had in promoting the efficiency of the educational and other services it provides. Had Plaintiff remained as DHS's head football coach, his protected speech would not have had any effect on his performance as coach, the upcoming football season, the DHS football program, or the operations of Dedham Public Schools.

50. Plaintiff's petitioning of the government was a substantial or motivating factor in Defendants' decision to fire him and/or not renew his contract, and but for Plaintiff's protected petitioning, he would not have been fired and/or his contract would have been renewed.

51. Plaintiff suffered loss of earning, emotional distress, loss of reputation, and harassment as a direct and proximate result of Defendants' violation of his constitutional rights.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendants, jointly and severally, that orders Defendants to pay compensatory and punitive

damages to Plaintiff, awards Plaintiff reasonable attorneys' fees and costs, and grants Plaintiff any and all other such relief that the Court deems just and proper.

\* \* \*

## PLAINTIFF DEMANDS A JURY TRIAL

Dated: February 16, 2021

Respectfully submitted,

/s/ Andrew J. Couture
Andrew J. Couture
BBO No. 671193
Law Office of Andrew J. Couture
81 Merriam Avenue
Leominster, MA 01453
Tel: (978) 502-0021

Michael Bekesha\*
BBO No. 675787
Judicial Watch, Inc.
425 Third Street, S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172

\*Application for admission forthcoming

*Counsel for Plaintiff*