UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID FLYNN,<br>        Plaintiff<br><br>v.<br><br>MICHAEL J. WELCH, JIM FORREST, and<br>STEPHEN TRAISTER,<br>        Defendants | Civil Action No. 1:21-cv-10256-IT |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Michael J. Welch, Jim Forrest, and Stephen Traister (together, "Defendants") submit this Reply Memorandum of Law in further support of their Motion for Summary Judgment and in response to Plaintiff David Flynn's Opposition to Defendant's Motion.

**1.   The Balancing of Interests Favors Defendants.**

While much of Defendants' Memorandum speaks for itself to refute Plaintiff's First Amendment analysis, Plaintiff is mistaken that Plaintiff's interest in speaking on a purported matter of public concern outweighed Defendants' interest in the efficient operations of Dedham Public Schools. Plaintiff argues that (1) Plaintiff's interest outweighed Defendants' interest because he was not a hinderance to the school's goals and (2) his insults of Superintendent Welch did not undermine Welch's authority. In both arguments, Plaintiff misapplies the balancing test.

    **a.   Defendants Reasonable Predictions That Plaintiff's Speech Had the Potential to Disrupt Dedham Public Schools Were Sufficient To Justify His Non-Reappointment.**

Plaintiff was not reappointed because his statements attacked the values of Dedham School District, undermined its leader, and could have hindered its efficient operations. In his Opposition, Plaintiff states that "the evidence would permit a jury to find that Flynn would not be a hinderance

1

to the efficient operations of Dedham Public schools or its educational goals." **Plt's Opp. at 12**. Plaintiff later argues that following his October 22, 2020 email, "there were no disruptions to Dedham Public Schools." **Plt's Opp. at 14**. In both instances Plaintiff misapplies the standard. Defendants need not show that Plaintiff's words caused actual disruption to the school district, nor are they required to prove that Plaintiff would be a hinderance to the school district's operations. Instead, the question is *whether Plaintiff's speech had "some potential to affect"* the school districts operations. Curran v. Cousins, 509 F.3d 36, 49 (1st Cir. 2007); quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (emphasis added). In asking this question, the First Circuit gives "[s]ignificant weight . . . . to the public employer's reasonable predictions of disruption." Curran, 509 F.3d at 49.

Plaintiff's comments about the school district and Superintendent Welch were sufficient for Defendants to reasonably predict disruptions to the efficient operations of the school district. No jury could find that Plaintiff's speech did not have "some potential to affect" the school district. Because Defendants acted reasonably to prevent potential harm to the school district, Plaintiff's claims must be rejected.

### b. Plaintiff's Opposition To Superintendent Welch Was Independently Sufficient To Justify His Non-Reappointment.

Plaintiff claims that his attacks on Welch were appropriate because they "went to school committee members and members of the community from his personal email account" rather than to Welch directly. **Plt's Opp. at 12**. This argument is irrelevant to the analysis. The First Circuit is clear that whether the speech is made directly to the supervisor, as in Hennessy, or "to the public" in general, like Curran, public employers are entitled to prevent disrespectful speech from their employees. Hennessy v. City of Melrose, 194 F.3d 237 (1st Cir. 1999); Curran, 509 F.3d at 49.

Plaintiff attempts to distinguish his actions from the facts in Curran because that case involved comments comparing the supervisor to Hitler and references to a plot by Hitler's generals against him. But the principles expounded in Curran were not intended to be limited merely to allusions to Hitler and the Nazis. In fact, far from restricting its ruling to the facts at hand, the court in Curran concluded that "a government employer may bar its employees from using ***offensive utterances*** to the public." Curran, 509 F.3d at 49. (emphasis added). The First Circuit has also held that "a supervisor is entitled to a modicum of respect and decorum in work-related situations." Hennessy, 194 F.3d at 248. Calling your boss Hitler is not the only speech that an employer can prohibit.

As discussed more fully in Defendant's Memorandum, Plaintiff insulted Welch in many inappropriate ways. Plaintiff's email carried violent imagery and veiled threats. Plaintiff called Welch a "canary," which Welch interpreted as a reference to a canary in a coal mine, which is often the first casualty of the spreading of poisonous gas. **Welch Dep., 49:24-50:8**.[1] Plaintiff also predicted that Welch would be the catalyst for "civil unrest" that would lead to the end of "peace and harmony" in the community. **Welch Exhibit 6; October 22, 2020 Email**.[2] Because these comments were objectively inappropriate for an employee to express publicly about the leader of their organization, Defendants were justified in terminating Plaintiff's employment as a response to his attacks against Welch.

---

[1] Copies of excerpts from the transcript of the deposition of Michael J. Welch are attached to the Supplemental Affidavit of Brian E. Lewis as Exhibit D.

[2] Copies of the exhibits from the deposition of Michael J. Welch are attached to the Affidavit of Brian E. Lewis as Exhibit C.

**2.      Defendants Are Entitled To Qualified Immunity.**

In an attempt to avoid the application of the qualified immunity defense, Plaintiff makes several misstatements of law.

**a.      Plaintiff Misstates The Qualified Immunity Standard And Fails to Meet His Burden.**

In contending that Defendants are not immune from his claims, Plaintiff argues that "[n]o case has even come close to suggesting speech outside the confines of the classroom (or football field) could be a disruption to the educational mission of the school district." **Plt's Opp. at 16**. This is not the standard to determine whether qualified immunity applies. For qualified immunity to apply, it is Plaintiff's burden to cite case law which explicitly show that Plaintiff's rights, at the time, of the action, were clearly established. While it is true that Plaintiff need not present "factually identical circumstances" to his own, Plaintiff must prove that there is sufficient case law to show that Defendants were on notice that his First Amendment rights were clearly established at the time of the decision. Decotiis v. Whittemore, 635 F.3d 22, 36 (1st Cir. 2011) ("[f]or the right to be clearly established, the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with fair warning"); citing Wilson v. Layne, 526 U.S. 603, 617 (1999).

To support his allegation that his rights were clearly established at the time of Defendants' action, Plaintiff points to only two cases, one from the District of Rhode Island and another from the 7th circuit – neither is persuasive and neither show that Plaintiff's rights in this circumstance were "clearly established." First, Plaintiff cites Mullen v. Tiverton School District which is severely dissimilar to the facts in this case. 504 F. Supp. 3d 21 (D.R.I 2020). The plaintiff in Mullen was a teacher and union president who was terminated after requesting to bargain over COVID-19 related distance learning plans, attempting to attend a meeting discussing distance

learning held by the superintendent, and violating the Superintendent's gag order of her by posting about educational issues in a Facebook Group. Id. at 25-27. The plaintiff in Mullen was trying to complete a duty that was related to her union responsibilities and did so in a completely appropriate manner. There was no evidence that Mullen was undermining the moral or educational goals of the school district, nor did she publicly launch personal attacks against the superintendent or any other school administrator. Plaintiff, unlike Mullen, was not disciplined for trying to speak to Welch (which he did), trying to attend any school related meetings (which he could have), or his comments about education related issues (which he freely shared). Instead, Plaintiff was not reappointed for his bigoted, xenophobic remarks which showed disdain for the school district's values and for his personal attacks against Welch which could have undermined his supervisory authority within the school district. Mullen is irrelevant.

Plaintiff also wrongly tries to rely on Gustafson v. Jones, 290 F.3d 895 (7th Cir. 2002). In Gustafson, two police officers in Wisconsin were involuntarily transferred several months after complaining to their union president (who then contacted the press and city) about a substantial departure from established protocol used to investigate a shooting. This case is also irrelevant. First, the court in Gustafson explicitly stated that its holding was "a narrow one that is driven in large part by the trial strategy that the defendants themselves chose," a strategy which involved denying that the defendants had any knowledge or concerns about the plaintiff's speech. Id. at 913. This is directly opposite to the approach used by Defendants here who have clearly stated that Plaintiff was not reappointed because his speech was inappropriate. Further, the court in Gustafson, directly before the quote relied on by Plaintiff, stated that "[o]n a different record, there might have been a question about how clear it was that the public employer could not punish employees who exercised First Amendment rights, if the employer cited efficiency concerns as its

reason. But this case does not present that question." Id. at 913. Gustafson does not apply because Defendants did, in fact, cite efficiency concerns as one justification for Plaintiff's non-reappointment.

Next, the plaintiffs in Gustafson merely alerted their union president that they were concerned that their investigation into a shooting had been cut short and the union president then sent letters addressing the officers' concerns. These officers did not oppose the purpose of the law enforcement agency nor lob personal insults at their supervisor. Plaintiff's insults and xenophobic attacks against Welch and the school district are therefore dissimilar to the facts of Gustafson.

If case law existed at the time which would have provided Defendants "fair warning" that Plaintiff's rights were clearly established, as required by Decotiis, Plaintiff failed to identify it and has therefore failed to meet his burden. Decotiis, 635 F.3d at 36. Because Plaintiff has failed to show that this is the "extraordinary case" in which "qualified immunity will not apply," Defendants must be protected by qualified immunity. Meagher v. Andover Sch. Comm., 94 F. Supp. 3d 21, 43 (D. Mass. 2015) (internal quotations and citations omitted).

### b.  Plaintiff Misstates The Qualified Immunity Standard, As "Every" Reasonable Reasonable Official Must Have Understood That His Action Was A Violation For The Qualified Immunity Defense To Fail.

In addition, Defendants are entitled to qualified immunity because it is not clear that every reasonable official would have understood that their actions violated Plaintiff's rights. In his Opposition, Plaintiff misstates this test, arguing "the test is not 'every' reasonable official but rather 'a' reasonable official." **Plt's Opp. at 18**. Plaintiff's claims are inaccurate, as Defendants have appropriately stated the standard as explained by the Supreme Court, The First Circuit, and the District of Massachusetts. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the

contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right") (Emphasis added and internal quotation marks omitted); Díaz-Bigio v. Santini, 652 F.3d 45, 50-51 (1st Cir. 2011) "A right is clearly established and immunity will not issue *only if every reasonable official* would have understood that what he is doing violates that right." (Emphasis added and internal quotation marks omitted); Meagher., 94 F. Supp. 3d at 42 ("A right is clearly established and immunity will not issue *only if every reasonable official* would have understood that what he is doing violates that right." (Emphasis added and internal quotation marks omitted)

### c. Defendants' Reliance On Counsel Is One Factor That The Court May Consider In Granting Qualified Immunity.

The First Circuit has clearly stated that relying on the advice of counsel is an element that "should be factored into the totality of the circumstances and considered in determining the . . . entitlement to qualified immunity." Cox v. Hainey, 391 F.3d 25, 34-5 (1st Cir. 2004). Plaintiff misconstrues this fact to allege that Defendants have presented a "reliance on counsel defense." **Plt's Opp. at 17**. Defendants have not asserted a reliance on counsel defense. Instead, Defendants have properly noted that Superintendent Welch spoke with counsel before deciding not to reappoint Plaintiff. This is clearly a factor the court can consider in determining whether qualified immunity applies.

Further, this is not the first time that Defendants revealed that counsel was involved in the decision not to reappoint Plaintiff's employment. In Defendants' initial disclosure's Kevin Bresnahan, Esq. of Murphy, Hesse, Toomey & Lehane LLP was disclosed as an individual "likely to have discoverable information that Defendant may use to support its defenses." **Defendants'**

**Initial Disclosures, Pg. 2**.[3] Defendants are fully entitled to the protections of qualified immunity outside of their reliance on counsel, but their involvement of counsel is simply another factor showing that Defendants are protected by qualified immunity because Plaintiff's rights were not clearly established and because Defendants acted reasonably.

### d. The Court Can Rule On Qualified Immunity At Summary Judgment.

The Court can (and should here) find qualified immunity as a defense for First Amendment claims at summary judgment. Ortiz-Resto v. Rivera-Schatz, 2021 U.S. Dist. LEXIS 117569 at * 35 (D.P.R. June 22, 2021) (Acknowledging the "tug-of-war" between the summary judgment and qualified immunity standards, courts in the First Circuit 'fram[e] the factual events according to summary judgment's traditional leeway to the nonmoving party's version of events, and then ask whether, given that story, a reasonable officer should have known that his actions were unlawful."); quoting Justiniano v. Walker, 986 F.3d 11, 27 (1st Cir. 2021). "Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). Courts have therefore emphasized that qualified immunity "should be resolved at the earliest possible stage of litigation," whether that be at the motion to dismiss stage or summary judgment. Justiniano, 986 F.3d at 27 (upholding district court's finding of qualified immunity at summary judgment); citing Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013). Because Defendants will lose the protections of qualified immunity should this case be erroneously permitted to go to trial, because the undisputed facts show that

---

[3] A Copy of Plaintiff's Initial Disclosures is attached to the Supplemental Affidavit of Brian E Lewis as Exhibit E.

Defendants acted reasonably, and because Plaintiff has not pointed to any evidence that his rights were clearly established, Defendants should be protected by qualified immunity.

**3.     Plaintiff Does Not Point To Any Legitimate Issues Of Fact For Trial**

While it is clear from Defendants' Memorandum that there is no triable issue of fact precluding summary judgment, Plaintiff does make one claim in this regard that should be specifically refuted. In his opposition, Plaintiff claims that "there is a factual dispute as to the reasons why Defendants decided not to reappoint Flynn." **Plt's Opp. at 3 n.1**. Plaintiff supports this claim by pointing to Defendants' Memorandum which states that Plaintiff's October 22, 2020, email was the sole reason for Plaintiff's non-reappointment and then compares that statement with Defendants' interrogatory answers which suggest that other October emails were also factors. This is not a genuine issue of fact.

While all the emails exchanged between Plaintiff, Welch, and other school officials in October 2020 are necessary to understand the context of this case, Plaintiff was not reappointed because of the offensive and insulting comments that he made in his October 22, 2020, email alone. Plaintiff's October 22 email did not come 'out of the blue' and was the culmination of Plaintiff's outrage. The emails which preceded October 22 are relevant to understanding that outrage but were not the reason, or the but for cause, of his non-reappointment.

The record abounds in evidence that Plaintiff was not reappointed because of the statements in his October 22 email. First, all three defendants testified that if Plaintiff had not sent that email, he would not have been not reappointed. **Welch Dep., 119:12-120:1, 121:14-23**; **Forrest Dep.,**

9

**84:3-8**;[4] **Traister Dep., 69:5-15, 100:18-22**.[5]  Next, when Defendants gathered to discuss terminating Plaintiff, they only discussed the October 22 email.  **Welch Dep., 63:20-65:7**; **Traister Dep., 67:12-69:7**.  Finally, in the meeting where Flynn was told of his non-reappointment, Defendants showed him copies of only the October 22 email and the school goals; more evidence that this was the sole reason for his non-reappointment.  **Welch Dep., 98:2-21**; **Traister Dep., 79:1-80:21.**

Despite Plaintiff's attempts to play linguistical games using Defendants' interrogatory answers, it is clear from the record that Plaintiff was not reappointed because of his October 22, 2020, email alone and there is no genuine issue of material fact.  Because Plaintiff puts forward no real evidence to dispute Defendants' heavily supported claim that the October 22 email was the reason for Plaintiff's non-reappointment, this attempt at creating an issue of fact should be disregarded.

        Respectfully submitted,

        MICHAEL J. WELCH, JIM FORREST, and
        STEPHEN TRAISTER,

        By their attorney,

        /s/ Brian E. Lewis
        Brian E. Lewis, Esq. (BBO #643717)
        Jackson Lewis P.C.
        75 Park Plaza
        Boston, MA 02116
        (617) 367-0025

Date: March 4, 2022

---

[4] Copies of excerpts from the transcript of the deposition of Jim Forrest are attached to the Supplemental Affidavit of Brian E. Lewis as Exhibit F.

[5] Copies of excerpts from the transcript of the deposition of Stephen Traister are attached to the Supplemental Affidavit of Brian E. Lewis as Exhibit G.

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 4, 2022.

                                      /s/ Brian E. Lewis
                                      Jackson Lewis, P.C.

4890-7025-6913, v. 1